Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Penny Brandenburger*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Penny Brandenburger,<br><br>          Plaintiff,<br><br>     v.<br><br>Life Insurance Company of North America; LogistiCare Solutions, LLC Short Term Disability Plan; LogistiCare Solutions, LLC Long Term Disability Plan; LogistiCare Solutions, LLC,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Penny Brandenburger (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant LogistiCare Solutions, LLC (hereinafter referred to as the "Company") sponsored, administered and purchased a group short-term disability insurance policy which was fully insured by Life Insurance Company of North America (hereinafter referred to as "LINA").  The specific LINA group short-term disability policy is known as Group Policy No.: LK-751178 (hereinafter referred to as the "STD Policy").  The Company's purpose in sponsoring, administering and purchasing the STD Policy was to provide short-term disability insurance for its employees.

4. Upon information and belief, the STD Policy may have been included in and be part of an employee benefit plan, specifically named the LogistiCare Solutions, LLC Short Term Disability Plan (hereinafter referred to as the "STD Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the STD Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, the Company also sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by LINA.  The specific LINA group long-term disability policy is known as Group Policy No.: LK-0963341 (hereinafter referred to as the "LTD Policy").  The Company's purpose in

sponsoring, administering and purchasing the LTD Policy was to provide long-term disability insurance for its employees.

6. Upon information and belief, the LTD Policy may have been included in and be part of an employee benefit plan, specifically named the LogistiCare Solutions, LLC Long Term Disability Plan (hereinafter referred to as the "LTD Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the LTD Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

7. The LINA STD Policy No. LK-751178 and LINA LTD Policy No. LK-0963341 may at times hereinafter be referred to collectively as the "Policies."

8. Upon information and belief, LINA functioned as the claim administrator of the Policies. However, pursuant to the relevant ERISA regulation, the Company, STD Plan, and/or LTD Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

9. LINA operated under a financial conflict of interest in evaluating Plaintiff's short-term and long-term disability claims (hereinafter collectively referred to as Plaintiff's "claims").

10. LINA operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

11. LINA's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her short-term and long-term disability benefits.

12. The Company, LINA, STD Plan and LTD Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

13.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

14.    Incident to her employment, Plaintiff was a covered employee pursuant to the STD Plan, the LTD Plan and the relevant Policies and a "participant" as defined in 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits from the STD Plan and LTD Plan and the relevant Policies pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the STD Plan and/or LTD Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

15.    Plaintiff also seeks a determination in this action that she is disabled and meets the "Any Occupation" definition of disability set forth in the LTD Plan and/or LTD Policy as all of the evidence she submitted to LINA supports a determination by the Court that she meets the LTD Plan and/or LTD Policy's "Any Occupation" definition of disability, such that she is also entitled to these benefits. Plaintiff believes this issue will be ripe before the Court since the "Regular Occupation" timeframe in the LTD Plan and/or LTD Policy will likely expire while this matter is pending before the Court.

16.    After working for the Company as a loyal employee, Plaintiff became disabled on or about March 3, 2015, due to serious medical conditions and was unable to work in her designated occupation as a Customer Service Representative. Plaintiff has remained continuously disabled as that term is defined in the relevant STD Policy and LTD Policy for both "Regular Occupation" and "Any Occupation" benefits since the day she

became disabled and has not returned to work in any occupation as a result of her serious medical conditions.

17. Following the onset of her disability, Plaintiff filed a claim for short-term disability benefits under the relevant STD Policy which was administered by LINA. LINA made every decision in Plaintiff's short-term disability claim.

18. Upon information and belief, the relevant STD Policy and definition of disability governing Plaintiff's short-term disability claim is as follows:

"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. Unable to perform the material duties of his or her Regular Occupation; and
2. Unable to earn 80% or more of his or her Covered Earnings from working in his or her Regular Occupation."

19. Upon information and belief, the relevant LTD Policy and definitions of disability governing Plaintiff's long-term disability claim are as follows:

"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. Unable to perform the material duties of his or her Regular Occupation; and
2. Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

1. Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
2. Unable to earn 80% or more of his or her Indexed Earnings."

20. In support of her claim for short-term disability benefits, Plaintiff submitted to LINA medical evidence which supported her allegation that she met the definition of disability as defined in the relevant STD Policy.

21. In a letter dated April 2, 2015, LINA informed Plaintiff it was denying her claim for short-term disability benefits.

22. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's April 2, 2015 denial of her short-term disability claim and submitted additional medical evidence to support her allegation that she met the definition of disability as defined in the relevant STD Policy.

23. Upon information and belief, as part of its review of Plaintiff's claim for short-term disability benefits, LINA obtained a medical records only "paper review" from one of its own employees, Penny Chong, M.D. who LINA refers to as its "staff medical director."

24. Upon information and belief, as a LINA employee, Dr. Chong has an incentive to protect her own employment by providing paper reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to LINA and which supported the denial of Plaintiff's short-term disability claim.

25. Plaintiff questions the independence, impartiality and bias of LINA's own employee to fully and fairly review her short-term disability claim and alleges Dr. Chong's opinions are adversarial to her claim because of her employment relationship with LINA. Plaintiff believes LINA's financial conflict of interest is a motivating factor in why it referred Plaintiff's short-term disability claim to its own employee for review.

26. In a letter dated June 30, 2015, LINA informed Plaintiff it was upholding its decision to deny her claim for short-term disability benefits.

27. Following LINA's June 30, 2015 denial of her short-term disability claim, Plaintiff filed a claim for long-term disability benefits under the relevant LTD Policy.

28. In administering Plaintiff's LTD claim, LINA operated in a conflict of interest as it made the decision with regard to whether Plaintiff was disabled and was liable for the payment of benefits.

29. In a letter dated November 9, 2015, LINA informed Plaintiff it was denying her claim for long-term disability benefits.

30. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's June 30, 2015 denial of her short-term disability claim and LINA's November 9, 2015 denial of her long-term disability claim and submitted additional medical, vocational and lay witness evidence supporting her appeal and her allegation that she is disabled and meets each and every definition of disability in the STD and LTD Policies.

31. In support of her claims, Plaintiff submitted to LINA a February 22, 2016 narrative letter authored by her board certified treating physician who opined, "…it is more than reasonable to assume that [Plaintiff] has been unable to work in her prior occupation as Customer Service Representative since March 2, 2015. It is also reasonable to assume that [Plaintiff] will continue to be unable to work in any capacity indefinitely."

32. Plaintiff also submitted to LINA a February 24, 2016 Residual Functional Capacity Form which precluded her from engaging in any work, including sedentary work.

33. Plaintiff also submitted to LINA a Functional Capacity Evaluation report dated November 8, 2015, wherein after an extensive several hour evaluation, a qualified physical therapist concluded that, "…[Plaintiff] is <u>UNABLE to perform the physical</u>

1  demands or material duties of her work as a Customer Service Representative or any other

2  gainful occupation on a regular and consistent basis…" (Original emphasis).

3        34.    Further supporting her claim, Plaintiff submitted a vocational report from a

4  certified vocational expert dated February 16, 2016, who after reviewing Plaintiff's

5  aforementioned evidence, the definitions of disability in the Policies as well as interviewing

6  her concluded, "To a reasonable degree of vocational probability…[Plaintiff] is not able to

7  work in any occupation and meets the own occupation and any occupation definition[s] of

8  disability in the [policies]."

9        35.    Plaintiff also submitted updated medical records from each of her treating

10  providers and a list of her current medications, as well as the side effects they cause and the

11  impact they have on her ability to work in any occupation and in any work environment.

12        36.    In addition to the medical records and reports submitted to LINA, Plaintiff

13  submitted three (3) sworn affidavits from herself, her fiancé and her long-time friend, who

14  all confirmed that Plaintiff is unable to work in any occupation and that her medical

15  conditions had not improved in any meaningful way since her date of disability.

16        37.    LINA's financial conflict of interest in Plaintiff's claim is evidenced in the

17  fact that LINA entered into the Regulatory Settlement Agreement ("RSA") with the Arizona

18  Department of Insurance on June 11, 2013 (the RSA is attached as Exhibit "A" to this

19  Complaint).

20        38.    Plaintiff reminded LINA of the RSA and its claim administration

21  responsibilities by submitting a copy of the agreement to LINA during the administrative

22  review of her claims.

23        39.    The RSA resulted from a multistate examination of LINA's disability

24  claims practices which led to governmental agency regulatory concerns, a corrective

25

26

action plan with regulatory monitoring of LINA by governmental agencies in LINA's evaluation of its disability claims, which includes similarly situated insureds such as the Plaintiff.

40. As part of the RSA, LINA agreed to pay $925,000 in fines to the participating state regulatory agencies.

41. As part of the RSA, LINA agreed to collectively pay 5 different states' regulatory agencies hundreds of thousands of dollars for claims monitoring.

42. The terms of the RSA apply to Plaintiff's claims and the terms of the RSA are relevant in this action as it relates to whether LINA complied with those terms in its review of her claims.

43. Plaintiff alleges that LINA's review of her claims failed to fully comply with the terms of the RSA and its failure to do so precluded a full and fair review pursuant to ERISA. Plaintiff is entitled to discovery with regard to LINA's efforts to comply with the terms of the RSA during its review and decision making in her claims.

44. As part of its review of Plaintiff's claims for short-term and long-term disability benefits, LINA obtained medical records only "paper reviews" of Plaintiff's claims from three physicians named Robert N. Uniszkiewicz, M.D., Arash Nafissi, D.O. and Michael D. Snyder, M.D.  LINA did not disclose Drs. Uniszkiewicz, Nafissi or Snyder's reports to Plaintiff during its administrative review of her claims even though she asked for them well prior to the time it denied her claims.

45. Upon information and belief, Plaintiff alleges Drs. Uniszkiewicz, Nafissi and/or Snyder are long time medical consultants for LINA and/or the disability insurance industry.  As a result, Plaintiff alleges Drs. Uniszkiewicz, Nafissi and/or Snyder may have an incentive to protect their own consulting relationships with LINA and/or the disability

insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claims, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny disability claims.

46. On June 24, 2016, Drs. Uniszkiewicz, Nafissi and Snyder reached out to Plaintiff's board certified treating physician with written questions for his response. Drs. Uniszkiewicz, Nafissi and/or Snyder did not provide Plaintiff's treating physician with copies of their reports.

47. On July 7, 2016, Plaintiff's board certified treating physician responded to each question asked by Drs. Uniszkiewicz, Nafissi and/or Snyder and reiterated his opinion that, "working would exacerbate [Plaintiff's] current symptoms. Working in any capacity would aggravate and worsen her symptoms" and that the "results of the FCE show that the patient has significant physical limitations and is unable to work in any capacity."

48. In letters dated February 18, 2016, February 24, 2016 and May 4, 2016, in order to engage LINA in a dialogue so she could perfect any alleged deficiencies in her claims, Plaintiff requested from LINA a complete copy of any and all medical records only "paper reviews" (like the ones completed by LINA's aforementioned medical professionals) and the opportunity for her and her treating physicians to respond to the reviews prior to LINA rendering a decision in her claims.

49. Prior to rendering its final denial in Plaintiff's short-term disability claim and denial of Plaintiff's long-term disability claim, LINA never shared with Plaintiff the medical records only "paper reviews" authored by Drs. Uniszkiewicz, Nafissi and/or Snyder so she could respond to the reports and perfect her claims. LINA's failure to provide Plaintiff with

the opportunity to respond to the reports is an ERISA procedural violation, it precluded a full and fair review pursuant to ERISA and also violates Ninth Circuit case law.

50. In a letter dated August 22, 2016, LINA notified Plaintiff it had denied her claims for short-term and long-term disability benefits pursuant to the Policies. In the letter, LINA also notified Plaintiff she had exhausted her administrative levels of review with regard to her short-term disability claim and could file a civil action lawsuit in federal court pursuant to ERISA, in her short-term and long-term disability claims.

51. Upon information and belief, LINA's August 22, 2016 denial letter confirms that it failed to provide a full and fair review and in the process committed several ERISA procedural violations and RSA violations. LINA violated ERISA for numerous reasons including completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met any definition of disability in the Policies.

52. In evaluating Plaintiff's claims on appeal, LINA owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer them "solely in [her] best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  53. LINA failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claims with regard to what evidence was necessary so she could perfect her appeals and claims.

54. LINA's failure to investigate the claims and to engage in this dialogue and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claims is an ERISA procedural violation, it also violates Ninth Circuit case law and is a reason she did not receive a full and fair review.

55. Plaintiff alleges LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, and the terms of the RSA, by failing to have Plaintiff's claims reviewed by a truly independent medical professional; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the STD Policy and LTD Policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and the denials of her claims; by providing biased and one sided reviews of Plaintiff's claims that failed to consider all the evidence submitted by her and/or by de-emphasizing medical evidence which supported Plaintiff's claims; by disregarding Plaintiff's subjective and self-reported complaints/symptoms; by failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; by failing to engage Plaintiff in a dialogue so she could respond to Drs. Uniszkiewicz, Nafissi and/or Snyder's reports and submit the necessary evidence to perfect her claims and by failing to consider the impact the side effects that Plaintiff's medications would have on her ability to engage in any occupation.

56. Plaintiff alleges a reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to

its financial conflict of interest that manifested in her claims as a result of the dual roles LINA undertook as the decision maker and the payor of benefits. LINA's conflict of interest provided it with a financial incentive to deny Plaintiff's claims and when it did, it saved itself money.

57. Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest. Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by LINA to retain a reviewing medical professional in Plaintiff's short-term and/or long-term disability claim and of *any* individual who reviewed her claims.

58. Plaintiff alleges the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation and/or RSA violation which may have impacted or influenced LINA's decisions to deny her short-term and/or long-term disability claims.

59. The standard of review for this Court to apply is *de novo* as neither the STD Policy nor the LTD Policy contain discretionary language.

60. As a direct result of LINA's decision to deny Plaintiff's short-term and long-term disability claims, she has been injured and suffered damages in the form of lost short-term and long-term disability benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the STD Plan and/or the LTD Plan, from any other Company Plan and/or the Company as a result of being found disabled. Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

1    61.    Pursuant to 29 U.S.C. §1132, in this action Plaintiff seeks and is entitled to
2 recover unpaid disability and non-disability employee benefits, prejudgment interest,
3 reasonable attorney's fees and costs from Defendants.

4    62.    Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.
5 §20-462, or at such other rate as is appropriate to compensate her for the losses she has
6 incurred as a result of Defendants' nonpayment of benefits.

7    WHEREFORE, Plaintiff prays for judgment as follows:

8    A.    For an Order finding that the evidence in Plaintiff's short-term disability
9 claim is sufficient to prove she meets the definition of disability set forth in the STD Plan
10 and/or STD Policy and that she is entitled to the remaining short-term disability benefits
11 she was not paid, and any other non-disability employee benefits she may be entitled to
12 as a result of that Order, from the date she was first denied these benefits through the date
13 of judgment with prejudgment interest thereon;

14    B.    For an Order directing Defendants to continue paying Plaintiff the
15 aforementioned benefits until such a time as she meets the conditions for the termination of
16 benefits;

17    C.    For an Order finding that the evidence in Plaintiff's long-term disability
18 claim is sufficient to prove that she meets the "Regular Occupation" definition of
19 disability set forth in the LTD Plan and/or LTD Policy and that she is entitled to these
20 benefits, and any other non-disability employee benefits she may be entitled to as a result
21 of that Order, from the date she was first denied these benefits through the date of
22 judgment with prejudgment interest thereon;

D. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

E. Assuming the issue is ripe before the Court (i.e. the 24 month "Regular Occupation" definition of disability and timeframe set forth in the LTD Plan and/or LTD Policy has expired), Plaintiff seeks an Order that the evidence in her long-term disability claim is sufficient to prove that she also meets the "Any Occupation" definition of disability set forth in the LTD Plan and/or LTD Policy and that she is entitled to these benefits, along any other non-disability employee benefits she may be entitled to as a result of that Order, with pre-judgment interest thereon;

F. Assuming the issue is ripe before the Court and the Court issues an Order that Plaintiff meets the "Any Occupation" definition of disability in the LTD Plan and/or LTD Policy, Plaintiff seeks an Order directing Defendants to continue to pay these benefits and any other non-disability employee benefits she may be entitled to as a result of that Order, until such a time as she meets the conditions for the termination of these benefits;

G. Alternatively, if the Court determines that Plaintiff meets the definition of disability in the STD Plan and/or STD Policy and the "Regular Occupation" definition of disability in the LTD Plan and/or LTD Policy for that entire timeframe, but the Court is unable to make a determination as to whether Plaintiff meets the LTD Plan and/or LTD Policy's "Any Occupation" definition of disability, then Plaintiff seeks an Order remanding her long-term disability claim to the Plan Administrator for an administrative review where she can submit new and additional evidence so the Plan Administrator may determine whether she meets the "Any Occupation" definition of disability;

H. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

I. For such other and further relief as the Court deems just and proper.

DATED this 29th day of September, 2016.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff